IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-1044-WYD-MJW

ALVARO J. ARNAL,

    Plaintiff,

v.

ASPEN VIEW CONDOMINIUM ASSOCIATION, INC.;
ASPEN SNOWMASS CARE, INC., d/b/a FIRST CHOICE PROPERTIES &
MANAGEMENT, INC.,

    Defendants.

_____

**ORDER**
_____

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 9), filed on July 7, 2015, which was originally filed as a Motion to Dismiss, but was converted to a Motion for Summary Judgment by this Court on February 4, 2016. The parties were given until February 15, 2016 to file any additional materials for the Court's consideration of this Motion. Both parties submitted additional materials, and the matter is fully briefed.

Additionally, Plaintiff filed a Motion to Strike (ECF No. 51) regarding the Affidavit of Jack L. Smith filed in support of Defendant Aspen View Condominium Association's additional materials for the motion for summary judgment. The Motion is fully briefed.

This matter arises out of a dispute surrounding the presence of a tenant's assistance dog on the premises of a condominium development that has a no-dog policy.

1

Plaintiff is a joint-owner of one of eighteen condominium units within the Aspen View Condominiums in Aspen, Colorado. Pl.'s Compl., ¶ 25. The property is managed by Defendant First Choice Properties ("FCP"). *Id.* at ¶ 23. The premises are governed by the bylaws, rules, and policies promulgated by the Aspen View Condominium Association ("AVCA") Board of Managers (the "Board"). *Id.* at ¶ 26. Under these rules and regulations, dogs are not permitted on the premises. *Id.* at ¶ 28. In September of 2013, Plaintiff decided to vacate his unit and rent it to a tenant who required the use of an assistance dog to cope with her periodic seizures (the "tenant"). *Id.* at ¶¶ 29-32. On October 11, 2013, Plaintiff notified FCP of his intent to rent his unit to the tenant with an assistance dog, and requested information about what AVCA's policy would be for assistance dogs. *Id.* at ¶ 33. On November 22, 2013, Plaintiff entered into a written lease agreement with the tenant. *Id.* at ¶ 42. The tenant then took possession of the unit. Def.'s Counterclaim, ¶ 21. After seeking legal counsel, the Board adopted a new policy with procedures for considering assistance animals on the premises, and sent that policy to Plaintiff on December 24, 2013. *Id.* at ¶ 22. The parties dispute the details regarding the nature of their communications between October of 2013 and March of 2014, and whether the Board's requests for information were reasonable under federal guidance from the U.S. Department of Housing and Urban Development. The tenant vacated the unit on or around March 31, 2014. Pl.'s Compl., ¶ 63. In April of 2014, Defendants notified Plaintiff of a resolution to impose fines, fees, and costs against Plaintiff for failure to provide adequate documentation of the tenant's need for a

reasonable accommodation for the assistance animal, and for allowing the assistance animal to reside in the unit without authorization. Def.'s Counterclaim, ¶¶ 47-49. Defendants filed a lien against Plaintiff's property in June of 2014. *Id.* at ¶ 50.

Plaintiff initiated this suit in May of 2015, asserting claims of discrimination and retaliation under the Fair Housing Amendments Act of 1988 ("FHA") at 42 U.S.C. §§ 3601-3619, and interference with contract. Defendants filed counterclaims against Plaintiff, asserting claims for 1) breach of covenants; 2) breach of contract; 3) breach of the implied duty of good faith and fair dealing; and 4) declaratory relief. Plaintiff filed a motion to dismiss Defendant's counterclaims, which was then converted into this motion for summary judgment. Plaintiff's argument is that AVCA's Supplementary Rules Regarding Policy on Assistance Dogs (the "Policy") violates the Fair Housing Act ("FHA" or the "Act") codified at 42 U.S.C. §§ 3601-3631, both on its face and as applied in this case. Thus, Plaintiff argues, since Defendant's counterclaims "all inextricably arise from and rely on an alleged violation of [the Policy, they] should be dismissed with prejudice." Pl.'s Motion, ECF No. 9, p. 2. Defendant asserts that the Policy does not violate the FHA, and that its counterclaims should not be precluded on the basis of the Policy.

II.  STANDARD OF REVIEW

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the dispute under the applicable law. *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir. 1995). I must construe all inferences in favor of the party against whom the motion under consideration is made. *Pirkheim v. First Unum Life Ins. Co.,* 229 F.3d 1008, 1010 (10th Cir. 2000). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

III.   DISCUSSION

The FHA was enacted by Congress in 1968 to eliminate discrimination in housing. The Act was amended in 1988 to extend protection to persons with disabilities. Under the Act, housing providers are prohibited from refusing to make "reasonable accommodations in rules, policies, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Persons with disabilities under the Act are defined as individuals with a physical or mental impairment that substantially limits one or more major life activities; 2) individuals who are regarded as having such an impairment; and 3) individuals with a record of such an impairment. 42 U.S.C. § 3602(h). The parties cite

and rely on two reports offering guidance on the interpretation of the Act as it applies to reasonable accommodation requests by disabled persons: 1) the Joint Statement, and 2) the HUD Notice.

The Joint Statement is a report issued by the U.S. Department of Housing and Urban Development ("HUD") and the U.S. Department of Justice in May of 2004, in an effort to provide technical assistance to the disabled and to housing providers regarding reasonable accommodations under the FHA. The report is entitled *Reasonable Accommodations Under the Fair Housing Act* ("Joint Statement"), available at http://www.hud.gov/offices/fheo/library/huddojstatement.pdf. The Joint Statement covers what types of discrimination are prohibited by the Act, noting that the Act "prohibits housing providers from discriminating against applicants or residents because of their disability . . . and from treating persons with disabilities less favorably than others because of their disability." Joint Statement, p. 2. Further, the Joint Statement notes that the Act "prohibits housing providers from refusing to persons with disabilities, or placing conditions on their residency, because those persons may require reasonable accommodations." *Id.*

The HUD Notice addresses reasonable accommodation request procedures and guidance specific to assistance animals for disabled persons. It was issued on April 25, 2013, and is entitled, *Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-Funded Programs* ("HUD Notice"), http://portal.hud.gov/hudportal /documents /huddoc?id=servanimals_ntcfheo2013-01.pdf.

### A. Whether the Policy Violates the FHA on Its Face

The first issue I must decide is whether the Defendant's Policy violates the FHA on its face. Plaintiff asserts the following arguments in his Statement of Material Facts, ECF No. 50, p. 6-7:

First, "AVCA's Policy prescribes a specific process by which persons with disabilities may seek accommodation of their disabilities." This provision on its face does not violate the FHA. The Joint Statement notes that the Act does not require any formal procedures for such requests. "However, having formal procedures may aid individuals with disabilities in making requests for reasonable accommodations and may aid housing providers in assessing those requests so that there are no misunderstandings as to the nature of the request, and, in the event of later disputes, provide records to show that the requests received proper consideration." Joint Statement, p. 11. The Act, in conjunction with the guidance of the Joint Statement, does not prohibit a specific process to seek accommodations. The fact that the Policy has a process does not make it illegal.

Second, "AVCA's Policy mandates that requests for reasonable accommodation of an assistance animal be in writing and submitted to AVCA's Board of Managers." Again, this provision does not violate the FHA. The Joint Statement notes that a request can be made orally or in writing, but that "it is usually helpful for both the resident and the housing provider if the request is made in writing," noting that this helps to "prevent

misunderstandings regarding what is being requested, or whether the request was made." *Id.* at 10. This provision does not violate the FHA on its face.

Third, "AVCA's Policy, subsection (a), requires persons seeking the accommodation of an assistance animal to supply proof that his or her disability is 'documented.'" Regarding reasonable accommodations, the Joint Statement notes that "[t]o show that a requested accommodation may be necessary, there must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability." *Id.* at 6. Further, for all requests for reasonable accommodation, housing providers are "entitled to obtain information that is necessary to evaluate if a requested reasonable accommodation may be necessary." *Id.* at 12. In cases where a person's disability is not obvious, "a housing provider may request reliable disability-related information that 1) is necessary to verify that the person meets the Act's definition of disability . . . 2) describes the needed accommodation, and 3) shows the relationship between the person's disability and the need for the requested accommodation." *Id.* at 13. The HUD Notice also supports the need for documentation. It states that, after receiving a reasonable accommodation request for an assistance animal, a housing provider "*must consider the following*: 1) Does the person seeking to use and live with the animal have a disability – i.e., a physical or mental impairment that substantially limits one or more major life activities? 2) Does the person making the request have a disability-related need for an assistance animal?" HUD Notice, p. 3 (emphasis added). In pursuit of this information, housing providers may ask applicants

- 7 -

"to submit reliable documentation of a disability and their disability-related need for an assistance animal." *Id.* at 4. This provision of the Policy does not violate the FHA.

Fourth, "AVCA's Policy, subsection (a)(2), requires persons seeking the accommodation of a service animal to provide proof that his or her assistance dog 'is specially trained and certified to aid the individual with the disability for which the accommodation is being sought.'" There is some disagreement among federal courts that have addressed this issue as to whether the FHA requires special training of assistance animals. *See Sanzaro v. Ardiente Homeowners Ass'n LLC*, 21 F. Supp. 3d 1109 (D. Nev. 2014); *Ass'n of Apartment Owners of Liliuokalani Gardens v. Taylor*, 892 F. Supp. 2d 1268 (D. Haw. 2012); *Fair Housing of the Dakotas, Inc. v. Goldmark Property Mgmt, Inc.*, 778 F. Supp. 2d 1028 (D.N.D. 2011). However, the HUD Notice indicates that the FHA does not require the animal to be individually trained or certified. The Policy states that in certain circumstances, an accommodation can be granted if "the dog is necessary to afford the individual an equal opportunity to use and enjoy the dwelling." Policy, p. 2, § (b)(2). This indicates that even animals without training or certification can be allowed as an accommodation. Accordingly, this provision does not violate the FHA on its face.

Fifth, "AVCA's Policy, subsection (d), fails to exempt even persons with known or obvious disabilities from having 'to provide documentation demonstrating that the dog for which accommodation is sought is an assistance dog.'" The Policy states that "[i]n no case will the individual seeking accommodation be required to provide documentation of

his or her disability or disability-related need for accommodation if such disability or disability-related need is readily apparent or already known to Board of Managers. However, this section does not alter the requirement that the individual seeking accommodation provide documentation demonstrating that the dog for which accommodation is sought is an assistance dog." Although the Policy makes an allowance for those with apparent or known disabilities to forego providing documentation of the disability, it is presumed that Plaintiff takes issue with the remaining clause which still requires documentation demonstrating that the dog is an assistance animal. As noted above, section (b)(2) of the policy indicates that the Board may allow an animal if it is found to be "necessary to afford the individual an equal opportunity to use and enjoy the dwelling." This shows that the Policy makes allowances for the consideration of an assistance animal when the disability is apparent or known to the Board, and when the animal has no special training or certification. Reading these provisions taken togther, the Policy does not violate the FHA on its face.

Sixth, "AVCA's Policy, subsection (b)(I), requires persons seeking the accommodation of a service animal to 'demonstrate that the proposed accommodation, at a minimum, will affirmatively enhance the individual's quality of life by ameliorating the effects of his or her documented disability.'" Plaintiff asserts that "nowhere in the law is such a demonstration required." Pl.'s Reply, ECF No. 22, p. 9. However, courts have affirmed this requirement in other cases. *See Bhogaita v. Altamonte Heights Condominium Ass'n Inc.*, 765 F.3d 1277 (11th Cir. 2014) (stating the jury was properly

instructed that to prove necessity, the plaintiff had to 'show, at a minimum, that the accommodation affirmatively enhances [his] quality of life by ameliorating (or reducing) the effects of his disability.'"); *Taylor*, 892 F. Supp. 2d at 1287 (holding that because the animal in question "must alleviate the disability, only those with disabilities will be afforded this accommodation."); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008) (holding that an accommodation is necessary under the FHA when it addresses the needs the disability creates). Additionally, the Joint Statement indicates that "[t]o show that a requested accommodation may be necessary, there must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability." Joint Statement, 6. Also, the HUD Notice states that in consideration of a requested accommodation, the housing provider "must" consider whether the presence of the animal "alleviates one or more of the identified symptoms or effects of a person's existing disability." HUD Notice, p. 3. This provision of the Policy does not violate the FHA on its face.

Seventh, "AVCA's Policy, subsection (b)(II), provides, in pertinent part, that '[i]n determining whether maintaining a particular dog on the premises of the [AVC] is reasonable, the Board of Managers will evaluate the facts surrounding the request and balance the needs of all parties involved and impacted by the presence of a dog on the premises.'" The HUD Notice states that for all reasonable accommodation requests, "the determination of whether a person has a disability-related need for an assistance animal involves an individualized assessment." *Id.* at 4. As noted in the HUD Notice,

since a housing provider may deny a request for an accommodation if the animal in question "poses a direct threat to the health or safety of others" or because the animal in question "would create substantial physical damage to the property of others" and other accommodations would not reduce or eliminate these issues, an evaluation of the interests of all parties is essential in the housing provider's assessment. *See id.* at 3. The Joint Statement also indicates that a request can be denied if providing the accommodation "would impose an undue financial and administrative burden on the housing provider or if it would fundamentally alter the nature of the provider's operations." Joint Statement, p. 7. Further, "[t]he determination of undue financial and administrative burden must be made on a case-by-case basis involving various factors, such as the cost of the requested accommodation, the financial resources of the provider, the benefits that the accommodation would provide to the requester, and the availability of alternative accommodations that would effectively meet the requester's disability-related needs." *Id.* Under the FHA and HUD guidance, a housing provider is allowed to undertake a reasonable evaluation of many factors in considering a request for an accommodation. This Policy provision does not violate the FHA on its face.

Additionally, Plaintiff claims that the Policy violates the FHA on its face because "AVCA's Policy application requires requesters to 'describe the dog, by breed and size.'" This contention addresses the questions that the Board posed to Plaintiff's tenant – not any specific provision in the Policy. In fact, the Policy does not define any limitations as to breed, size, or weight of the animal. Accordingly, the argument does not pertain to the

face of the Policy. Additionally, although the HUD Notice states that a housing provider cannot place limitations on animal breed, size, or weight, it does not indicate that a provider cannot ask about those characteristics, and it also indicates that a housing provider may deny a request for an accommodation if the specific animal poses a threat to others or would cause substantial physical damages to the property of others. HUD Notice, p. 3. This contention by Plaintiff is better addressed in the inquiry surrounding the Board's reasonableness in considering the requested accommodation and not in an analysis of the legality of the Policy on its face.

Based on the foregoing, I do not find that the Policy violates the FHA on its face. Because the Policy does not violate the FHA on its face, Plaintiff's argument that Defendants' counterclaims should be dismissed because they "inextricably arise from and rely on an alleged violation of the Policy" is without merit. Because the Policy is legal on its face, Defendant may bring claims against Plaintiff for alleged violations of it.

**B. Whether the Policy Violates the FHA as Applied**

Plaintiff also asserts that the Policy violates the FHA as applied in this case. In support of this assertion, Plaintiff refers to various factual allegations in his interaction with the Board between October 2013 and April 2014. Specifically, Plaintiff states that after a meeting between Plaintiff, the tenant, and members of the Board in January of 2014, the Board "imposed even more conditions upon the tenant than its Policy required," and asserts that on the basis of that meeting, the Board knew about the tenant's disability and disability-related need for the dog. Pl.'s Compl., ¶¶ 47-49; Motion for Sum. Jud., ECF

No. 9, p. 13; Pl.'s Material Facts, ECF No. 50, p. 7-8. Plaintiff claims that "AVCA requested information to which it was not entitled because by January 8, 2014, the tenant's disability was known to the Board." Motion for Sum. Jud., p. 15.

Defendant argues that the fact that it requested more information after the meeting with the tenant demonstrates that "as of January 20, 2014, the Association was unclear about the need for a dog. At that time, the Association did not have knowledge of the disability-related need for the dog, which information was necessary before it could conduct a meaningful review of the Plaintiff's request." Def.'s Response, ECF No. 21, p. 13. Defendant also asserts that at that time, it conditionally approved the accommodation request "based on the understanding that the Plaintiff would provide documentation establishing the need for the accommodation." *Id.* at 14. Defendant asserts that it is a matter of disputed fact whether 1) the tenant's disability was known to the Board in January of 2014; and 2) whether the tenant was in fact disabled within the meaning of the FHA. *Id.* at 14-15.

Case law in this circuit is limited on this issue. However, case law in other jurisdictions, as cited by the parties in this case, offers more insight into the interpretation of the FHA and reasonable accommodation requests for assistance animals. Many of these cases indicate the need for a case-by-case, factual inquiry to determine the reasonableness of the actions of housing providers in evaluating accommodation requests. *See Bhogaita*, 765 F.3d at 1289 (noting the "highly fact-specific reasonableness inquiry, which [requires] a balancing of the parties' needs."); *DuBois v.*

*Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1178-79 (9th Cir. 2006) ("The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination."); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748-49 (7th Cir. 2006) ("First, the requested accommodation must be reasonable, which, as we have stated, is a 'highly fact-specific inquiry and requires balancing the needs of the parties.'"); *Taylor*, 892 F. Supp. 2d at 1272 ("The reasonable accommodation analysis is a highly fact-specific [inquiry], requiring case by case determination."). The reasonableness of the Board's requests for information, both before and after the meeting with the tenant, as well as any interpretation of whether the Policy as applied violated the FHA, are genuine issues of material fact, which preclude summary judgment in this matter.

## IV. PLAINTIFF'S MOTION TO STRIKE

Defendants submitted the affidavit of Jack L. Smith ("Smith") with their additional materials in support of their response to the summary judgment motion. Smith states that he was an AVCA Board member during all relevant times surrounding Plaintiff's claims, and has "personal knowledge of the matters set forth" in the affidavit. Affidavit, ¶ 1.

Plaintiff argues that the affidavit should be stricken because it "has no relevance to the affirmative defense raised by Plaintiff" and because it "fails to comply with the Court's Practice Standards" regarding statements of material facts. Pl.'s Motion, ECF No. 51, p. 2-3.

Defendant argues that the affidavit directly relates to the affirmative defense of illegality, and represents Defendants' position on "many disputed issues of fact related to plaintiff's defenses." Def.'s Response, ECF No. 52, p. 2.

I do not find merit in Plaintiff's argument that the affidavit fails to comport with this Court's Practice Standards because it is not in the form of a statement of material facts. In my Order of February 4, 2016 (ECF No. 48), I invited the parties to "submit additional materials for the Court to consider in connection with the motion for summary judgment." The Practice Standards provide guidance related to a party's statement of material facts if a party chooses to submit material facts. Defendants' submission is an affidavit, which is not subject to the formatting rules for statements of fact.

Plaintiff's argument that the affidavit has no relevance to the issues currently before the Court also fails. The most relevant aspect about the affidavit is that it clearly illustrates that genuine issues of material fact remain as to whether the Board and AVCA acted reasonably in the application of the assistance animal policy in this case, and in their requests for information regarding the tenant's disability and disability-related need for an assistance animal. I have already determined that the Policy does not violate the FHA on its face, so the remaining questions pertain to the factual inquiry into the reasonableness of the Board's application of that Policy and its requests for information regarding the tenant's disability. Because the affidavit represents Defendants' position on many of the disputed issues of fact, Plaintiff's motion is denied.

V.  CONCLUSION

For the reasons discussed herein, it is

ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED.**

It is

FURTHER ORDERED that Plaintiff's Motion to Strike Affidavit of Jack L. Smith in Support of Defendant Aspen View Condominium Association, Inc.'s Submission of Additional Materials in Connection with the Plaintiff's Motion for Summary Judgment (ECF No. 51) is **DENIED**.

Dated:   February 29, 2016.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE