**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01044-WYD-MJW

ALVARO J. ARNAL,

Plaintiff/Counter Defendant,

v.

ASPEN VIEW CONDOMINIUM ASSOCIATION, INC., a Colorado non profit corporation, and ASPEN SNOWMASS CARE, INC. D.B.A. FIRST CHOICE PROPERTIES & MANAGEMENT, INC. a Colorado corporation.

Defendants/Counter Claimants.

---

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

COME NOW Defendants, Aspen View Condominium Association, Inc. ("AVCA" or "Association") and Aspen Snowmass Care, Inc., a Colorado corporation doing business as First Choice Properties & Management, Inc., by and through their counsel, and respectfully submit their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## MOVANTS' STATEMENT OF MATERIAL FACTS

1. Aspen View Condominium Association, Inc. is an incorporated association of members consisting of the owners of condominium units in the Aspen View Condominiums, a single building with 18 units located at 326 Midland Avenue, Aspen Colorado. [**Exhibit A**, Affidavit of Jack Smith, ¶1].

2. Alvaro Arnal (“Arnal”) owns unit 201, a two bedroom unit in the Aspen View Condominiums, together with co-owner Clinton Coerdt. [Arnal Complaint, ¶25 (document no. 1); **Exhibit C**, Coerdt deposition, pg. 7 lines 15-25].

3. The Association has a no pet policy. [**Group Exhibit D**, p. 1 (deposition exhibit 10) and p. 3, ¶6 (deposition exhibit 11)].

4. On October 11, 2013, Arnal requested information from the Association’s manager via email with respect to the Association’s policy regarding allowing a service dog on the property. Arnal’s email did not provide any specific information regarding the proposed tenant, the disability, or any disability related need for a dog. [**Exhibit E**, deposition exhibit 31].

5. The Association communicated with Arnal to advise him it needed to seek legal counsel on the question. [**Group Exhibit F**, deposition exhibit 33, deposition exhibit 34, p. 2, and deposition exhibits 138, 139 and 142].

6. Arnal advised the Association that Natasha MacArthur (“MacArthur”) intended to move into his unit in the middle of November [**Group Exhibit G**, deposition exhibit 143] and made plans with MacArthur for that as well [**Group Exhibit G**, deposition exhibit 144].

7. MacArthur leased a bedroom from Arnal on November 22, 2013. [**Exhibit H**, deposition exhibit 145, pp. 1 and 4].

8. MacArthur moved into Arnal’s unit on November 22, 2013 and brought her dog Stevie Nicks with no objection from the Association. [**Exhibit B**, MacArthur

Complaint, ¶5; and **Exhibit I**, MacArthur deposition, p. 44, lines 15-19 and p. 45, lines 9-13].

9. MacArthur worked two jobs and snowboarded numerous days a week. [**Exhibit I**, p. 85, lines 7-19 and p. 86, lines 5-23].

10. MacArthur had no apparent disability, and the Association and its board members had no knowledge of any claimed disability. [**Exhibit A**, ¶12].

11. MacArthur's dog did not accompany her to either of her jobs or while she was snowboarding, and instead remained in the Aspen View unit. [**Exhibit I**, p. 50, line 24 - p. 51, line 1].

12. On December 24, 2013, the Association provided to Arnal its policy for service dogs and a list of questions for anyone seeking an accommodation for a service dog. [**Exhibit J**, deposition exhibit 121, p. 1].

13. The Association's list of questions requested reliable documentation of a disability and reliable documentation of a disability-related need for a dog. [**Exhibit J**, pp. 3-4].

14. Arnal sent a written reply to the Association on January 3, 2014, in which he provided limited information in response to the Association's request for information, but in which he stated that MacArthur refused to provide any response to the Association's requests for reliable documentation of her claimed disability or reliable documentation of a disability-related need for a dog. [**Exhibit A**, ¶8; **Group Exhibit K**, p. 2 (deposition exhibit 122) and p. 3 (deposition exhibit 146)].

15. The Association, through two members of its Board of Directors, Heather Vicenzi and Cliff Mohwinkel, met with Natasha MacArthur and Alvaro Arnal on January 8, 2014. [**Exhibit L**, Arnal deposition, p. 34, lines 13-16].

16. At the meeting with the Board of Directors on January 8, 2014, MacArthur orally disclosed the nature of her claimed disability and the claimed purpose of her dog for the first time. [**Exhibit M**, deposition exhibit 47, p. 1].

17. At the same meeting, Arnal and MacArthur agreed to provide the Association with a note from Dr. Niebur, a physician whom MacArthur had seen on many occasions over a period of several years, to substantiate the claimed disability and disability-related need for a dog. [**Exhibit I**, p. 61, lines 11-14; p. 62, line 12 - p. 63, line 1].

18. Arnal promised to provide a letter from MacArthur's doctor the following week after the January 8th meeting, as well as a copy of the certification card for MacArthur's dog. [**Exhibit N**, deposition exhibit 147].

19. The Association provided a conditional approval of the request to allow the dog on January 20, 2014. [**Exhibit O**, deposition exhibit 50, P. 1]. The conditional approval was based upon MacArthur's promise to obtain and provide an appropriate letter from her doctor and to provide a copy of her dog's certification card.

20. Certain conditions of occupancy stated in the conditional approval were later revised to address objections stated by Arnal's counsel and were superseded by terms set forth in the Association's counsel's letter of February 10, 2014, described more fully below. [**Exhibit A**, ¶14 and attachment 1].

21. The Association followed up with Arnal on the promised documentation January 28, 2014 because it still had not been provided. [**Exhibit P**, deposition exhibit 52].

22. The Association advised that if adequate documentation was not received, a demand for removal of Stevie Nicks would be sent to Arnal. [**Exhibit J**, p. 1; **Exhibit O**; **Exhibit P**; and **Group Exhibit Q**, p. 1, p. 2, third paragraph and p. 3, final paragraph (deposition exhibits 55 and 68)]. Each letter clearly set out that the Association must receive the documentation requested or the Association would be required to take action to remove the dog. No demand for removal of the dog was sent by the Association to Arnal. [**Exhibit L**, p. 42, lines 15-24, p. 44, lines 12-17, p. 46, lines 16-25, p. 53, line 23 - p. 54, line 21].

23. Arnal's response to the request for the documentation which he previously promised to provide, was to tell the Association to contact the dog training individuals. The Association responded by providing Arnal with a copy of a HUD document [**Exhibit R**, deposition exhibit 36] and advising that his response was unacceptable. [**Group Exhibit Q**, p. 1].

24. When the Association refused to contact a dog trainer for medical records, Arnal advised that MacArthur would have the dog trainer send her medical records to the Association. [**Exhibit S**, deposition exhibit 59].

25. Arnal acknowledged in a letter dated February 12, 2014 that "[t]he requests and conditions stipulated in [the Association's letter February 10, 2014] are

very reasonable and within the scope of the law and the Fair Housing Act." [**Exhibit T**, deposition exhibit 66, p. 3, first paragraph].

26. Neither Arnal nor MacArthur provided any information from a medical professional as they had promised until February 20, 2014, when Arnal's attorney provided a letter from Dr. Niebur dated February 18, 2014. However, the letter did not state that MacArthur was disabled, what such disability was, nor that there was a disability-related need for a service animal. [**Exhibit U**, deposition exhibit 107.]

27. Dr. Niebur had not seen MacArthur for over three years [**Exhibit V**, deposition exhibit 109] and simply wrote what he was told by MacArthur to write in the letter dated February 18, 2014 (**Exhibit U**). [**Exhibit W**, Niebur deposition, p. 38, line 12 - p. 39, line 11]. Dr. Niebur created the notes the day he was called and requested to create the notes. [Niebur deposition, p. 3, line 18 - p. 36, line 19 and p. 42, line 15 - p. 43, line 17; **Exhibit U** and **Group Exhibit X** (deposition exhibits 104, 107 and 110, 111)].

28. MacArthur advised the Association via letter from Arnal's attorney dated March 4, 2014 that she was moving out by April 1, 2014. [**Exhibit Y**, deposition exhibit 108, p. 1, last paragraph; **Exhibit L**, p. 104, lines 16 - p. 105, line 1].

29. By letter from its attorney, Mr. Neiley, dated March 7, 2014, the Association notified Arnal that MacArthur would be permitted to continue keeping her dog in the unit until her stated move-out date of April 1. [**Exhibit Z**, deposition exhibit 72, p. 1, second paragraph].

30. On March 11, 2014, after receiving notification of MacArthur's intent to move out, the Association received a second letter from Dr. Niebur. [**Exhibit AA**, deposition exhibit 73].

31. MacArthur never advised anyone she wanted to stay after announcing she was moving out. [**Exhibit I**, p. 158, lines 13-16 and p. 159, lines 14-23]. The Association did reach out to Arnal to verify that MacArthur was still planning on moving out. Arnal's attorney confirmed that MacArthur was still moving out as originally planned. [**Exhibit BB**, deposition exhibit 74].

32. When MacArthur gave notice that she was moving out by April 1, the Association understood that MacArthur's request to keep the dog in the unit had been withdrawn, and the Association did not make a definitive determination whether the Niebur letter of March 11, 2014 would constitute the required reliable documentation of disability and disability-related need for the dog. [**Exhibit A**, ¶18; **Exhibit CC**, Jack Smith deposition, p. 39, lines 15-23].

33. Had MacArthur indicated that she had changed her mind and did not want to vacate the unit, the Association would have given full consideration to the March 11 letter and made a determination of whether it provided reliable documentation of a disability and disability-related need for a dog. [**Exhibit A**, ¶19].

34. The Association did not correspond with MacArthur. The Association communicated solely with Arnal and Arnal was in contact with MacArthur. [**Exhibit I**, p. 158, line 15].

35. MacArthur, along with her dog Stevie, moved out of Arnal's Aspen View Unit by April 1, 2014. [**Exhibit I**, p. 80, lines 11-13]. Stevie Nicks, MacArthur's dog, resided with MacArthur during the entire tenancy at Aspen View.

36. MacArthur moved from Arnal's unit into "employee housing" in Aspen. [**Exhibit DD**, deposition exhibit 153]. MacArthur had been attempting to obtain employee housing for seven years before getting a unit March 24, 2014. [**Exhibit I**, p. 84, line 10-18].

37. The Association never evicted MacArthur or her dog from the Aspen View unit, nor did it commence any legal proceeding for eviction or give any notice of the commencement of such a proceeding. [**Exhibit A**, ¶20].

38. The Association never denied the request by MacArthur to allow the dog and instead allowed both MacArthur and the dog to continue residing in the unit until MacArthur voluntarily moved out on or about April 1, 2014. [**Exhibit A**, ¶¶20 and 22].

39. After MacArthur moved out of the apartment she went on vacation and left Stevie Nicks with friends for an entire month. [**Exhibit I**, p. 81, lines 11-25]. In fact, Stevie Nicks died November 26, 2014. [**Exhibit I**, p. 139, lines 4-6] and Plaintiff has been without another dog since that time.

40. Other than the March 11 letter from Dr. Niebur [**Exhibit AA**, p. 1], which the Association received after MacArthur had unequivocally announced she was moving out by April 1, the Association never received any reliable documentation from MacArthur or Arnal confirming that MacArthur had a disability or disability-related need for a dog. [**Exhibit A**, ¶21].

41. Association board members Jack Smith and Heather Vicenzi never communicated directly with MacArthur or Arnal in connection with any of the matters relating to the request to allow the dog, either orally or in writing, except for Ms. Vicenzi's attendance at the January 8 meeting. [**Exhibit CC**, p. 55, lines 18-23, p. 169, lines 6-15; **Exhibit EE**, Vicenzi deposition, p. 51, lines 12-13].

42. The Association relied to a significant extent on the Notice issued by the United States Department of Housing and Urban Development on April 25, 2013, entitled "Subject: Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-Funded Programs (the "HUD Notice"). [**Exhibit A**, ¶9; **Exhibit R**].

## <u>II. LEGAL ARGUMENT</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c). See <u>Celotex Cop. V. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (The plain language of Rule 56(c) mandates the entry of summary judgement against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case…).

## <u>CLAIMS UPON WHICH JUDGMENT IS SOUGHT</u>

### A. Claim 1 - Discrimination under Federal Fair Housing Act and State Fair Housing Act.

**Claims 1 and 2 of the Complaint assert the same occurrences and claim that they amount to both discrimination and retaliation under the Fair Housing Act. The undisputed material facts show that there is no claim under either theory.**

**Discrimination**

Because the CFHA is almost identical to the FHAA, federal case authority is persuasive in interpreting the provisions of the CFHA. Weinstein v. Cherry Oaks Retirement Community, 917 P.2d 336 (Colo. App. 1996); Boulder Meadows v. Saville 2 P. 3d 131 (Colo. App. 2000).

Burden of proof and elements. To prevail on a claim of discrimination under 42 U.S.C. § 3604(f)(3), a Plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that the defendant refused to make the requested accommodation. Dubois v. Association of Apartment Owners of 2987 Kalahaua 453 F3d 1175 (9th Cir. 2006).

*Element 1*: Plaintiff asserts that MacArthur was disabled or handicapped. "Merely having a disability does not make one disabled under disability discrimination laws. Rather establishing the existence of an actual disability under the FHA involves a three step process. First, the court must determine whether the claimant's alleged condition constitutes a mental or physical impairment." Bragdon v. Abbott, 524 U.S. 624 at 632, 118 S.Ct. 2196, 141 L.Ed.2d 540, 66 U.S.L.W. 4601 (1998). Second, the court must determine whether this impairment "affects a major life activity." Third, the court must find that the impairment placed "a substantial limit on the major life activity

asserted." While Plaintiff asserted MacArthur had a seizure disorder after MacArthur notified the Association she was moving out, there was no evidence presented which demonstrated an effect on a major life activity which substantially limits the major life activity as required by 42 U.S.C. 3602(h) of the Fair Housing Act. On the contrary, the undisputed facts showed a person whose active work and life style and extensive time without the presence of a dog is substantially unaffected by her claimed disability.

*Element 2*: The evidence demonstrates that the Association had no knowledge of a disability given that MacArthur worked two jobs and was very active, including frequent snowboarding, all without the dog. When a claimed disability is not readily apparent, such as being blind, deaf or mobility impaired, a person requesting an accommodation must provide sufficient information to explain and make the housing provider aware of the disability as well as why the accommodation is necessary by explaining what tasks or work the service or assistance animal will be performing to alleviate the handicap. "The duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have… the ability to conduct a meaningful review of the requested accommodation…" Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008) (quoting Prindable v. Association of Apartment Owners, 304 F.Supp2d 1245, 1258 (D.Haw.2003).

The HUD Notice stated, among other things, that a housing provider "must consider" whether "the person seeking to use and live with the animal ha[s] a disability – i.e., a physical or mental impairment that substantially limits one or more major life

activities" and whether that person "ha[s] a disability-related need for an assistance animal." [**Exhibit R**, pp. 2-3] The HUD Notice also stated that "[h]ousing providers may ask individuals who have disabilities that are not readily apparent or known to the provider to submit reliable documentation of a disability and their disability-related need for an assistance animal." [**Exhibit R**, p. 3].

It was necessary for the Association to request documentation to show the disability. Yet, MacArthur refused to submit reliable evidence of a disability to the Association and she refused to even disclose the claimed disability and asserted need for the dog until the January 8, 2014 meeting, after the Association had made its written request for supporting documentation. The claimed disability (occasional seizures) was not apparent, even in that meeting. Much of the actions that Plaintiff sets forth as a basis to claim discrimination by Defendants is based upon the Association making repeated requests for reasonable documentation. Federal courts have long recognized that a defendant has the right, in response to a demand for an accommodation, to perform a meaningful review of the request to determine if it is statutorily required. <u>Schwarz</u> at 1219. See also <u>Overlook Mut Homes, Inc. v. Spencer</u>, 415 Fed. Appx 617, 621 (6th Cir. 2011). Defendants must have been given an opportunity to make a final decision with respect to MacArthur's request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if it is an accommodation required by law. Courts also agree a defendant may request, and indeed may have a duty to request, additional information from the plaintiff reasonably necessary to make a meaningful review and an informed decision whether the animal is

necessary to ameliorate the disability. Lucas v. Riverside park Condominiums Unit Owners Association, 776 N.W. 2d 801 (N.D. 2009) quoting Hawn v. Shoreline Towers Phase I Condominiums Association, 347 Fed Appx 464 (11th Cir. 2009), Overlook Mut. Homes, Inc. v. Spencer, 666 F Supp 2d 850, (S.D. Ohio 2009); Prindable at 1260; Auburn Woods I Homeowners Ass'n, 18 Cal.Reptr.3d at 683-84; (Cal Ct. App 3rd Dist. 2004); In re Kenna Homes Coop. Corp 557 S.E. 2d 787 at 799-800 (W.VA.2001). A plaintiff's failure to respond to a reasonable request for additional information can lead to dismissal of an action on the ground that the defendant could not have known of the plaintiff's disability and the actual necessity of a service or companion animal, see, e.g. Hawn, at *3, or that the defendant awaiting additional information did not in fact deny the request for an accommodation. See e.g. Prindable at 1260.

The Association requested that Natasha MacArthur provide reliable documentation of her disability, the disability related need for the dog, and the disability related assistance provided by the dog, on December 24, 2013. MacArthur refused to answer those questions but did agree to meet with two members of the Association's Board of Directors. At the meeting on January 8, 2014, MacArthur advised the Board that she had a seizure disorder and the dog would alert when she had one. Following the meeting, the Association sent Plaintiff a conditional approval on January 20, 2014 of MacArthur's request, provided that MacArthur submit a letter from her doctor on the disability which MacArthur and Arnal had promised to provide. Plaintiff has asserted that following the meeting the Association had no right to request further documentation.

However, Felkins v. City of Lakewood 774 F3d 647 (10th Cir. 2014) held that an individual's recitation of their medical condition is insufficient proof.

MacArthur's doctor sent a limited note to the Association on February 18, 2014. In that note Dr. Niebur wrote: "Patient has a medical concern that requires a service dog. Currently she has Stevie Nicks, a golden retriever." The doctor provided no information as to what disability MacArthur had, no information on how the dog was necessary or how the dog assisted her. **Exhibit U**. The Court in Hawn v. Shoreline Towers Phase I Condominiums Association, 347 Fed Appx 464 (11th Cir. 2009) reviewed a situation with letters which "provided very little information about the plaintiff's alleged disability, while one letter did not provide any whatsoever. Neither letter indicated whether his limitations and difficulties were temporary or permanent, nor did they indicate that Booster was actually 'necessary to afford [the plaintiff] equal opportunity to use and enjoy a dwelling' as opposed to just desirable or helpful." The Court upheld a ruling of summary judgment for the association as it found the plaintiff's accommodation request lacking. It found there was not sufficient evidence that the association knew or should have known of his disability, found his doctor's letters were generic and vague and failed to supply his credentials, and that they failed to show a nexus between the tasks the dog could perform and plaintiff's disability.

Dr. Niebur's letter did not provide any information regarding MacArthur's disability or even whether she was disabled. Ironically similar to the chiropractor in the Hawn case, Dr. Niebur had not seen MacArthur for over three years and simply wrote what he was told by MacArthur to write on **Exhibit U** (the letter submitted February 18, 2014).

*Element 3*: There was no evidence that the requested accommodation was necessary to allow MacArthur equal opportunity to use the housing. Plaintiff must demonstrate that preventing MacArthur from having a dog in the unit causes the denial of MacArthur's right to equal use and enjoyment of the unit. Prindable at 1256; Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir.1995). At no point has Plaintiff provided documentation showing the dog was necessary. MacArthur did not take the dog with her to either of her two jobs or snowboarding. After MacArthur moved out of the apartment she went on vacation and left Stevie Nicks with friends for an entire month. In fact, Stevie Nicks died November 26, 2014, and MacArthur has been without another dog since that time.

In Bronk v. Ineichen, 54 F.3d 425 (7th Cir.1995), the Court found ample evidence that a landlord had not discriminated against his two deaf tenants who had a dog living with them under a no-pets lease, when the evidence showed that the tenants had lived for years on their own without requiring the assistance of a dog. The judge focused on whether a reasonable accommodation was in fact necessary – "the concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life ameliorating the effects of the disability." Id. at 429.

*Element 4*: Plaintiff claims, contrary to the undisputed facts, that the restrictions that the Association would have placed on MacArthur's dog's occupancy, if she had provided the required documentation to entitle her to an accommodation, were not reasonable. The initial conditions suggested in the conditional approval letter were later

modified in the Association's counsel's letter of February 10, and Arnal expressly acknowledged that they were "very reasonable and within the scope of the law and the Fair Housing Act." MacArthur never expressed any disagreement with that acknowledgement. The dog must be on a leash, the dog must wear its harness and the owner must pick up after the dog immediately, and that it not bark incessantly. Nothing about the restrictions imposed represented an unreasonable request to MacArthur, and in fact courts have set forth similar requirements in many cases.

"The responsibility to offer a reasonable accommodation does not mean that a landlord must do everything possible to accommodate a disabled person; rather courts should undertake a cost-benefit analysis to determine what constitutes a reasonable accommodation." <u>Stevens v. Hollywood Towers and Condominium Association, et al</u>, 836 F.Supp.2d 800, 808 (N.D.Ill.2011), citing <u>Clabault v. Shodeen Mgmt</u>, 05 C 5482, 2006 WL 1371460 at 2 (N.D. Ill. May 15, 2006. The Court found the association's restrictions on areas within the complex in which the dog would be allowed were not unreasonable and did not amount to a denial of the accommodation to a no-pets policy. Similarly in <u>Bronk</u> at 430, the Court found it was not discriminatory or unreasonable for the landlord to request the tenant to accept liability for sanitation and for damages to the premises caused by the dog. There is nothing in the FHA that precludes the imposition of appropriate rules and regulations designed to lessen the impact of housing an animal in a no-pet building. <u>In re Kenna Homes</u>, 557 S.E. 2d 787. A necessary accommodation is typically considered reasonable "when it imposes no undue financial or administrative hardships on the defendant and when it does not undermine the basic

purpose of the [challenged] requirement". Hubbard v. Samson Management Corp., 994 F. Supp. 187, at 190 (S.D.N.Y. 1998). See also Bronk, at 429 – there is no "obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well".

*Element 5*: The Association never denied the accommodation request. The dog lived with MacArthur the entire time she lived in the unit. The Association granted a conditional approval of the accommodation request pending receipt of the required documentation which MacArthur refused to provide and then choose to move out. Ultimately to prevail on a claim under 42 U.S.C. §3604(f)(3), a plaintiff must prove all five elements 42 U.S.C.§ 3604(f)(3)(B); California Mobile Home, 107 F.3d 1374, 1380 (9th Cir. 1997); HUD v. Riverbay Corp. HUD ALJ 01-93-0320-1(September 9, 1994) as quoted in Dubois at 1179. Regardless of all other issues, without a refusal to make an accommodation there is no discrimination. See Prindable at 245. Although the information furnished by the plaintiffs was inadequate, they brought suit. Because the association had never denied the requested accommodation to its no-pets policy and had in fact conditionally granted the request pending the outcome of the case, the Court found no FHA violation. See also Bryant Woods Inn, Inc. v Howard County, 124 F3d 597, 602 (4th Cir. 1997) (A violation of the FHA occurs when the disabled resident is first denied a reasonable accommodation. Summary judgment in favor of the Condominium Association on the FHA discrimination claim was appropriate).

Arnal has alleged that the Association delayed responding to the request to allow the dog and that the delay was such to be deemed a failure to provide a reasonable

accommodation. However, a housing provider's duty to reasonably accommodate a person with a disability arises when the provided becomes aware of the person's disability and the disabled person makes a request for a reasonable accommodation. Boulder Meadows v. Saville, 2 P.3d 131 (Colo. App. 2000) quoting Jankowski Lee & Assoc. v Cisneros, 91 F.3d 891 (7th Cir. 1996). "For a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." United States v. Hialeah Hous Authority, 418 F.App'x 872, 876 (11th Cir. 2011).

First, there was no delay that affected MacArthur. Arnal advised the Association that MacArthur was going to move in mid-November. MacArthur did move in in mid-November with her dog, and with no objection by the Association. Once the Association completed its work with legal counsel and completed its policy on service dogs, the Association provided a copy to Arnal with a request for documentation from MacArthur on December 23, 2104. MacArthur refused to provide the information. The Association was not informed of any claimed disability until January 8, 2014, and Defendants issued a conditional approval January 20, 2014. Prior to that, Defendants had no information other than Arnal's general request for information on the Association's policy. There was no demand to Arnal by the Association to delay renting the unit to Plaintiff.

Once an accommodation is formally requested, the plaintiff may only bring a claim under the FHA if that accommodation is denied. Denial can be explicit or

constructive. Kromenhoek v. Cowpet Bay West Condominium Association 77 FSupp 3d 462, 470 (D.Virgin Islands 2014). However, a delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. At no time did the Association take action to demand Arnal not rent his unit or delay renting the unit. The Association worked with due diligence and created a policy to fairly implement a service animal exception to its governing documents. See also Overlook, 415 F.Appx at 622 (a delay alone does not equate to denial if there is no deprivation of the accommodation). There was no undue delay once the Defendants were provided the most basic information about what the claimed disability was and why MacArthur claimed she needed the dog. The Association promptly provided the conditional approval, pending receipt of the promised documentation. Any further delay was due solely to MacArthur's and Arnal's refusal to provide reliable documentation of a disability and disability-related need for a dog. There was never a denial of the accommodation. There was no demand for removal of the dog from the premises. Thus there was no violation of the Fair Housing Act. Arnal fails to establish a violation of 42 U.S.C. 3604 or C.R.S. § 24-34-501.

**Claim 2 - Retaliation under the Federal and State Fair Housing Act.**

Plaintiff's claim for retaliation is essentially just a restatement of the claim for discrimination. A retaliation claim requires a prima facie showing that (1) the plaintiff was engaged in protected activity; (2) he suffered an adverse action in the form of coercion, intimidation, threats or interference; and (3) there was a causal link between the two. Dubois at 1180. Arnal failed to make out a *prima facia* case of retaliation. The

Complaint lists no allegations of specific acts which were retaliation and taken on the part of Defendants other than those allegations submitted as discrimination. Here, MacArthur announced her intention to move out even before submitting the March 11 doctor's letter, and was permitted to keep her dog in the unit until she moved out. The Association took no action to require removal of the dog or impose fines until long after she had moved out. Plaintiff's FHA claims were filed long after MacArthur moved out and fines were imposed. There was no action taken by the Association that was supposedly motivated by the FHA complaint or any acts by either MacArthur or Arnal other than their failure to provide the legally required documentation.

But there was no discrimination. Every request sent to Arnal clearly stated a request for the documents legally allowed, and if documentation is not provided, removal of the dog will be required. All future tense requests for removal were based only on if MacArthur chose not to provide the documentation that the Association was legally entitled to request. A defendant must refuse to make a reasonable accommodation before a plaintiff can file suit under 42 U.S.C. § 3613. See Bryant Woods Inn, Inc. v. Howard County, 124 F. 3d 597, 602 (4th Cir. 1997) as well as Dubois at 1179. There was no retaliation.

**Claim 3 - State claim of Tortious Interference with Contract.**

An interference with contract claim requires proof that the interference was improper. CJI Civ. 24:1 (CLE Ed. 2005); Restatement (Second) of Torts § 766A and § 767. The association, in advancing goals articulated in its governing documents and rules, enjoys a right and privilege in so doing, and thus cannot be interfering improperly.

Memorial Gardens, Inc. v. Olympian Sales and Mgt. Consulting, 690 P.2d 207, 210-211 (Colo. 1984); Westfield Dev. Co. v. Rifle Inv. Assoc., 786 P.2d 1112 (Colo. 1990) (interference must be both intentional and improper). Where such a right and privilege exists, an interference with contract claim is not cognizable unless wrongful means, such as physical violence, fraud, civil suit or criminal prosecution are used. Electrolux Corp. v. Lawson, 654 P.2d 340 (Colo. App. 1982) (rev'd on other grounds). Given that the association's contacts were all within its legal rights to enforce its governing documents and seek information required of anyone seeking an accommodation, there can be no tortious interference with contract.

**Attorney's fees**

The Defendants are entitled to recover their attorney fees pursuant to the provisions of 42 U.S.C. § 3613(c)(2), C.R.S. §§ 13-17-201 and 38-33.3-123(1), Sections 21 and 23 of the Declaration, and Article XI, Section 4 of the Bylaws. Arnal is an owner of a unit in Aspen View Condominium Association, and is subject to the Declaration. The governing documents contain a prevailing party attorney fee provision at Sections 21 and 23 of the Declaration and Article XI, Section 4 of the Bylaws. The statute governing common interest communities also contains a mandatory attorney fee shifting provision. See, C.R.S. § 38-33.3-123. This Motion for Summary Judgment is an action to defend the provisions of the Declaration and the CCIOA statute, arising from the Association's right to enforce the no dog provision of the Bylaws, and concerning the qualified immunity of the individual directors embodied in the Declaration and CCIOA.

Therefore, the Association Defendants are entitled to an award of attorney's fees as the prevailing party upon the entry of summary judgment.

Pursuant to 42 U.S.C. 3613(c)(2), attorney fees are authorized to be paid out to the prevailing party. Taylor v. Harbor Pointe Homeowners Assn., 690 F. 3d 44, 50 (2d Cir. 2012), *cert. denied* 133 S. Ct. 1280 (District Court abused discretion in failing to award attorneys' fees to prevailing defendant association in failure-to-accommodate case, where plaintiff's action was groundless and without foundation). See also Mazzini v .Strathman, 140 So. 3d 253 (LaApp4 Cir. 2014) quoting Christiansburg Garment Co., 434 U.S. 412 at 421, 98 S.Ct. 694 quoting Carrion v. Yeshiva Univ., 535 F.2d 722, 727 (2d Cir. 1976). Defendants request their attorneys fees. There was never any discrimination in this case. This lawsuit was frivolous and meritless. Plaintiff requested an accommodation for his tenant MacArthur. MacArthur refused to cooperate and comply with the requirement of the Fair Housing Act and MacArthur was still allowed to remain in her unit with her dog. She delayed providing a doctor's note, when all the doctor required of her was a phone call and the note was delivered the day of the call. MacArthur chose to move out rather than provide a doctor's note that she had promised to provide.

## III. CONCLUSION

As shown above, the Plaintiff Arnal cannot meet a required element of his federal or state claims, and as such that failure is fatal to his claims. The Association never denied a reasonable accommodation. His state claim for interference fails as there has been no claim of any wrongful means used by the Association and so the interference

with contract claim is not cognizable and should be dismissed. Accordingly, the Court should enter summary judgment pursuant to Fed.R.Civ.P. 56 in the Defendants' favor on all federal and state claims asserted against them by Plaintiff Alvaro Arnal, and award Defendants their attorney's fees and award such other relief as the Court deems warranted. There are no genuine issues of fact and all federal and state claims of Plaintiff should be dismissed.

Defendants request to amend and supplement this motion pending the decision of the Court on the Plaintiff's pending Motion to Amend.

Dated this 2nd day of May, 2016.

Respectfully submitted,

HINDMANSANCHEZ P.C.

s/ Debra J. Oppenheimer

***Debra J. Oppenheimer***
HindmanSanchez P.C.
555 Zang St., Suite 100
Lakewood, CO 80228
Telephone: 303-432-9999
E-mail:doppenheimer@hindmansanchez.com
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016, I electronically filed the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Phyllis A. Roestenberg
Law & Mediation Office of Phyllis A. Roestenberg
217 E. 7th Avenue
Denver, CO 80203-3504
PARoestenberg@gmail.com

J. Kevin Bridston
Sean M. Hanlon
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80201-8749
kbridston@hollandhart.com
smhanlon@hollandhart.com

s/ Carole Zarrella
***Carole Zarrella, Paralegal***
HindmanSanchez P.C.
555 Zang St., Suite 100
Lakewood, Colorado 80228
Telephone: 303-432-9999
E-mail: czarrella@hindmansanchez.com