**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01044-WYD-MJW

ALVARO J. ARNAL,

Plaintiff/Counterclaim Defendant

v.

ASPEN VIEW CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation,

Defendant/Counterclaimant

ASPEN SNOWMASS CARE, INC. D.B.A. FIRST CHOICE PROPERTIES & MANAGEMENT, INC. a Colorado corporation;

ASPEN SNOWMASS LLC D.B.A. FIRST CHOICE PROPERTIES & MANAGEMENT, a foreign limited liability company;

JACK SMITH, an individual; and

HEATHER VICENZI, an individual,

Defendants.

---

**ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

---

COME NOW the Defendants, Aspen View Condominium Association, Inc. and Aspen Snowmass Care, Inc. D.B.A. First Choice Properties & Management, Inc., by and through their counsel, HindmanSanchez P.C., and for their Answer to Plaintiff's First Amended Complaint, state and allege as follows:

1. The statutes cited speak for themselves. If Plaintiff's interpretation is inconsistent with the cited statutes, Defendants deny the same.

2. The terms and provisions of the Fair Housing Act are self-evident, and need not be admitted or denied by Defendants. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

3. The case of Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.CT. 364, 34 L.Ed.2d 415 (1972) speaks for itself and no answer is necessary. If Plaintiff's interpretation is inconsistent with the cited statutes and Declaration sections, Defendants deny the same.

4. The Fair Housing Act speaks for itself. Defendants are without knowledge of any legislative discussions regarding same. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

5. The Fair Housing Act speaks for itself. Defendants are without knowledge of any legislative discussions regarding same. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

6. The Fair Housing Act speaks for itself. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

7. Defendants lack knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny same.

8. Defendants admit that a Joint Statement of the Department of Housing and Urban Development and the Department of Justice dated May 17, 2004 exists. The Joint Statement speaks for itself. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied. Plaintiff fails to reference the April 24, 2013 HUD Notice entitled "Service Animals and Assistance

Animals for People with Disabilities in Housing." The HUD Notice expressly states that "[h]ousing providers may ask individuals who have disabilities that are not readily apparent or known to the provider to submit reliable documentation of a disability and their disability-related need for an assistance animal." Plaintiff omits the fact that Defendants sent a copy of the April 24, 2013 HUD notice to Plaintiff.

9. The terms and provisions of the Joint Statement issued May 17, 2004 are self-evident, and need not be admitted or denied by Defendants. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

10. The terms and provisions of the Joint Statement issued May 17, 2004 are self-evident, and need not be admitted or denied by Defendants. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

11. The terms and provisions of the Joint Statement issued May 17, 2004 are self-evident, and need not be admitted or denied by Defendants. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

12. The terms and provisions of the Joint Statement issued May 17, 2004 are self-evident, and need not be admitted or denied by Defendants. This stated HUD comment is contrary to Felkins v. City of Lakewood, 744 F3d 647 (10th Cir). To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

13. The terms and provisions of the Joint Statement issued May 17, 2004 are self-evident, and need not be admitted or denied by Defendants. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

14. The terms and provisions of the Joint Statement issued May 17, 2004 are self-evident, and need not be admitted or denied by Defendants. The sentence "neither condominium associations, nor property management companies are exempted from the FHA requirements" is not within the Joint Statement. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

15. The terms and provisions of the Joint Statement issued May 17, 2004 are self-evident, and need not be admitted or denied by Defendants. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

16. Defendants are without sufficient knowledge to admit or deny if this Court has subject matter jurisdiction.

17. Defendants admit this Court has jurisdiction over Plaintiff's claims.

18. Defendants admit venue is proper within this Court.

19. Defendants admit Plaintiff is one of the owners of the residential property located at 326 Midland Avenue, Unit 201, Aspen, Colorado 81611 within the community of Aspen View Condominiums. The Defendants are without sufficient knowledge to admit or deny the remaining allegations within paragraph 19 of the First Amended Complaint.

20. Defendants admit the allegations in paragraph 20.

21. Defendants admit the allegations in paragraph 21.

22. Defendants admit that FCP managed the Association until April 2015, at which time the Association hired FCP LLC. Defendants deny the remaining allegations of paragraph 22.

23. Defendants admit that FCP was a Colorado corporation registered as Aspen Snowmass Care, Inc. d/b/a First Choice Properties & Management, Inc., and that it was dissolved. The Defendants are without knowledge of the remaining allegations of paragraph 23 and therefore deny the same.

24. Defendants admit that Aspen Snowmass LLC D.B.A. First Choice Properties & Management became the Association's manager as of April 2015. Defendants are without knowledge of the remaining allegations of paragraph 24 and therefore deny the same.

25. Defendants admit the allegations of paragraph 25.

26. Defendants admit that Heather Vicenzi was a member of the Board of Managers until August 2014. Defendants admit she is a citizen of the United States and a resident of the State of Colorado. Defendants deny all remaining allegations of paragraph 26.

27. Defendants admit Plaintiff is one of the listed recorded owners of Unit 201 within Aspen View Condominiums. Defendants admit that there are eighteen units within Aspen View Condominiums.

28. Defendants admit that Aspen View Condominiums are governed by bylaws, rules and policies IN ADDITION to the Condominium Declaration for Aspen View (A Condominium). Defendants deny the remaining allegations of paragraph 28.

29. Defendants admit there are three Board members for Aspen View Condominiums. Admit Jack Smith was a Board member until August of 2015. Admit Heather Vicenzi was a Board member until August 2014. Admit Cliff Mohwinkel was a board member until August 2015. Deny all remaining allegations in paragraph 29.

30. The terms and provisions of the document described in paragraph 30 of the First Amended Complaint are self-evident, and need not be admitted or denied by Defendants. To the extent said allegations are deemed or construed as factual allegations against Defendants, they are denied.

31. Defendants are without sufficient knowledge to admit or deny said allegations and therefore deny same.

32. Defendants are without sufficient knowledge to admit or deny said allegations and therefore deny same.

33. Defendants are without sufficient knowledge to admit or deny said allegations and therefore deny same.

34. Defendants are without sufficient knowledge to admit or deny said allegations and therefore deny same.

35. Defendants admit that Plaintiff sent the email listed in the allegations in paragraph 35. Defendants are without sufficient knowledge to admit or deny the remaining allegations and therefore deny same.

36. Defendants admit that Ivan Perrin forwarded the email referred to in paragraph 35, but deny that the message was limited to only the language set forth in paragraph 36.

37. Defendants deny said allegations.

38. Defendants admit Plaintiff contacted Kim Smeins via email on October 16, 2013. Defendants admit Ms. Smeins responded to Plaintiff. Defendants are without sufficient knowledge to admit or deny the remaining allegations and therefore deny same.

39. Defendants admit the allegation in paragraph 39.

40. Defendants admit the Board President sent an email, of which a part of the email read as set forth in the allegation in paragraph 40.

41. Defendants deny they did not contact Plaintiff until October 29. Defendants contacted Plaintiff via several emails on October 22, 2013. Defendants admit an email was sent October 29, 2013. The email speaks for itself. Defendants deny all remaining allegations.

42. Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 42 and therefore deny same.

43. Defendants admit receipt of an email from Plaintiff dated November 13, 2013. Defendants assert the email speaks for itself and deny all remaining allegations.

44. Defendants admit a lease was signed November 22, 2013. The lease speaks for itself and need not be admitted or denied. Defendants deny all remaining allegations.

45. Defendants admit no violation notices or letters were sent to Defendants after Plaintiff's tenant moved in. Defendants had sent numerous emails to Plaintiff prior to the tenant moving in. Defendants admit to sending a letter to Plaintiff dated December 23, 2013 seeking documentation of his tenant's disability and information regarding her need for the service animal requested. Defendants deny any remaining allegations.

46. Defendants admit the Association emailed the Plaintiff on December 23, 2013, a letter, a copy of the Association policy on assistance animals and a list of questions seeking information regarding Plaintiff's tenant's request for an accommodation. The email, policy, and letter sent are self-evident and speak for themselves. Defendants deny all remaining allegations.

47. The Association's letter sent December 23, 2013 was sent by the Board President and provided Plaintiff until January 6, 2014 to respond to the request for information. The items listed in the paragraph are selected portions from the letter sent to Plaintiff. The letter speaks for itself. Defendants deny all remaining allegations.

48. Defendants admit that they implemented a policy on service animals after review of the law, the U.S. Department of Housing and Urban Development FHEO Notice: FHEO-2013-01 on the Subject of Service Animals and Assistance Animals for People with Disability in Housing and HUD Funded Programs Issued April 25, 2013 and after consultation with counsel in order to be certain that they fairly and consistently treated all owners. The terms and provisions of the policy described in paragraph 48 of the First Amended Complaint are self-evident, and need not be admitted or denied by

Defendants. What is quoted in the First Amended Complaint is incomplete because the policy contains four pages.

49. Defendants admit that Plaintiff and his tenant met with two Board members of the Association on January 8, 2014. Said meeting was scheduled because Plaintiff refused to produce the key information that the Fair Housing Act and HUD notice of April 25, 2013 provide that associations may request in order to review a requested accommodation. The Association notified the Plaintiff of the right to request such information and notified Plaintiff that the tenant's dog was running at large in the community and defecating and no one was picking up after the dog. The meeting was scheduled after the Plaintiff asked to meet with the Association on January 6, 2014.

50. Defendants admit two Board members met with Plaintiff on January 8, 2014. Defendants deny the characterization that the meeting was an interview. Defendants deny all remaining allegations.

51. Defendants deny that Plaintiff and his tenant provided information to answer all the legally permitted requests for information regarding the disability.

52. Defendants admit that Plaintiff's tenant advised that the dog was officially trained and that a card was produced. However, the card provided was expired. Tenant's dog never wore a service vest and the tenant rejected the Board's request that the animal wear a vest. Defendants do not admit that possession of a vest or card confirms that the animal was a valid service animal.

53. Defendants admit that Plaintiff's tenant provided information as to how she obtained the dog in question. Defendants deny all remaining allegations in paragraph 53.

54. Defendants admit that the dog in question appeared well behaved on January 8, 2014 in the company of MacArthur. Defendants deny all remaining allegations in paragraph 54.

55. Defendants admit sending a conditional approval letter to Plaintiff on January 20, 2014 seeking the documentation that Plaintiff had promised would be forthcoming at the meeting on January 8, 2014, but which Plaintiff had not yet provided.

56. Defendants admit that they placed requirements on the dog so that the accommodation would be a reasonable accommodation to the Association. None of the requested requirements from the Association affected Plaintiff's tenant's need for the dog. The letter sent to the Plaintiff speaks for itself.

57. Defendants admit that Plaintiff failed to provide the information promised at the January 8, 2014 meeting, and on January 30, 2014, Plaintiff emailed the Association to respond to a follow up letter from the Association dated January 28, 2014 and told the Association to get the information itself by contacting the agency that trained the dog. The contents of the letter sent by Plaintiff speak for itself.

58. Defendants admit that the Board President sent an email to the community manager in response to Plaintiff's request that the Association obtain the necessary information. The Association Board members unanimously voted that the January 30, 2014 response of Plaintiff was not acceptable. The email sent speaks for

itself. The Association denies there was a vote on imposing fines or evicting anyone. All remaining allegations are denied.

59. Defendants deny the allegations in paragraph 59.

60. Defendants admit receipt of a letter from Dr. Dewayne Niebur on February 20, 2014 which was sent by Plaintiff's counsel. Defendants deny that Dr. Niebur is the AVCA Board approved doctor. Plaintiff's tenant had advised during the January 8, 2014 meeting that Dr. Niebur is her doctor, and the Board advised that a letter from him would be fine. Defendants deny that the letter complied in any respect with the request for documentation demonstrating a disability as the letter made no reference to a disability. Defendants deny any action by individual board members. Defendants deny all remaining allegations.

61. Defendants admit that the Association's attorney sent another request to Plaintiff through his counsel on February 28, 2014 asking that Plaintiff submit documentation. Said letter by counsel speaks for itself. Defendants are without sufficient knowledge to admit or deny what action Plaintiff took or what claims were made by his tenant. Therefore the remaining allegations are denied.

62. Defendants admit that Plaintiff's attorney advised Defendants on or about March 4, 2014 that the tenant would be moving out on or before April 1, 2014. No documents demonstrating that the tenant had a disability had been produced by Plaintiff, but even so, Plaintiff also requested that fines be waived upon his tenant moving. No fines had been imposed at that time. Defendants deny any remaining allegations.

63. Defendants admit that the Association's attorney notified Plaintiff on March 7, 2014 that they believed the tenant and her dog remained in violation of the Association's documents because no documentation asserting a disability had been presented to the Association, and therefore the fines were still accruing and would continue until the violation stopped, but the Association would take no further action should the tenant move by April 1, 2014. Defendants assert the Association's letter speaks for itself and the limited portions set forth by Plaintiff do not fully demonstrate the Association's actions.

64. Defendants admit that on March 11, 2014, Plaintiff finally provided a letter advising the Association that the tenant had a disability. The letter failed to explain how the dog assisted the disability when the dog was left in the unit and the owner was away all day and into the late evening on a regular basis. Defendants deny all remaining allegations.

65. Defendants are without sufficient knowledge to admit or deny the allegations and therefore deny same.

66. Defendants admit that the Association voted to adopt a resolution on June 5, 2014 regarding the situation with Plaintiff and his tenant. Defendants assert the entire resolution speaks for itself. Paragraph 66 intermingles portions of the resolution with allegations. Defendants deny the allegations set forth in paragraph 66 which are not part of the resolution.

67. Defendants admit that the Association followed their covenant enforcement policy and imposed fines against Plaintiff for the violations at the unit.

Defendants admit that the Association placed the legal fees incurred by the Association in enforcing the governing documents of the Association on the ledger of the Plaintiff pursuant to C.R.S. § 38-33.3-123, C.R.S. § 38-33.3-315(4) and the authority of the governing documents. C.R.S. § 38-33.3-316 creates a statutory lien, not the Association. The Defendants are without sufficient knowledge to admit or deny the remaining allegations.

68. Defendants admit a lien was filed against Unit 201 on behalf of Aspen View Condominiums. The instruction to the Association's counsel to file the lien was done by Clifford Mohwinkel. Defendants deny the remaining allegations.

69. Defendants admit a letter was sent to Plaintiff on February 10, 2015. The terms and provisions of the document are self-evident, and need not be admitted or denied by Defendants. The allegations set forth in paragraph 69 are incomplete and do not fully demonstrate the letter and intent of the Association, and the allegations are therefore denied.

70. Defendants admit a second notice was sent to Plaintiff on April 2, 2015. The notice was sent in error and Plaintiff was notified it was an error on April 8, 2015.

71. Defendants incorporate by this reference their responses to all paragraphs incorporated into paragraph 71 of the First Amended Complaint.

72. Defendants deny the allegation contained in paragraph 72 of the First Amended Complaint.

73. Defendants admit that Plaintiff made a request for an accommodation, but refused to provide the required documentation. Defendants deny the remaining allegations contained in paragraph 73 of the First Amended Complaint.

74. Defendants deny the allegations contained in paragraph 74 of the First Amended Complaint.

75. Defendants deny the allegations contained in paragraph 75 of the First Amended Complaint.

76. Defendants deny the allegations contained in paragraph 76 of the First Amended Complaint.

77. Defendants incorporate by this reference their responses to all paragraphs incorporated into paragraph 77 of the First Amended Complaint.

78. Defendants deny the allegations contained in paragraph 78 of the First Amended Complaint.

79. Defendants deny the allegations contained in paragraph 79 of the First Amended Complaint.

80. Defendants deny the allegations contained in paragraph 80 of the First Amended Complaint.

81. Defendants deny the allegations contained in paragraph 81 of the First Amended Complaint.

82. Defendants deny the allegations contained in paragraph 82 of the First Amended Complaint.

83. Defendants deny the allegations contained in paragraph 83 of the First Amended Complaint.

84. Defendants incorporate by this reference their responses to all paragraphs incorporated into paragraph 84 of the First Amended Complaint.

85. Defendants are without sufficient knowledge to admit or deny and therefore deny the allegations contained in paragraph 85 of the First Amended Complaint.

86. Defendants deny the allegations contained in paragraph 86 of the First Amended Complaint.

87. Defendants deny the allegations contained in paragraph 87 of the First Amended Complaint. Plaintiff told his tenant she had to move out.

88. Defendants deny the allegations contained in paragraph 88 of the First Amended Complaint.

89. Each and every allegation of the First Amended Complaint which has not been specifically admitted or denied is hereby denied.

## AFFIRMATIVE DEFENSES

1. The First Amended Complaint fails to state a claim against Defendants upon which relief can be granted.

2. Plaintiff's claims are barred or limited by the provisions of the: (a) Condominium Declaration for Aspen View (A Condominium) ("Declaration"), recorded at the Pitkin County Clerk & Recorder on January 27, 1976 in Book 308 at Page 143; (b) the Articles of Incorporation of The Aspen View Condominium Association, Inc.

(“Articles”); (c) the By-Laws of The Aspen View Condominium Association, Inc. (“Bylaws”); and (d) the Rules and Regulations of Aspen View (“Rules and Regulations”).

3. Plaintiff’s claims and recovery are barred or limited by the provisions of the Fair Housing Act and the regulations implementing the Act.

4. Plaintiff’s claims are barred or limited by the economic loss rule, as set forth in common law and C.R.S. § 13-21-102.5(6).

5. Defendants acted in good faith at all times, which bars the Plaintiff’s claims pursuant to common law, C.R.S. §§ 7-126-103, 7-128-401, 13-21-115.5(4), and 38-33.3-303(2)(b).

6. Plaintiff’s claims are barred or limited by the business judgment doctrine and the valid business justification rule.

7. Plaintiff voluntarily assumed a known, unreasonable risk and his recovery is accordingly barred by C.R.S. § 13-21-111.7.

8. Plaintiff’s claims are barred by the doctrines of waiver, estoppel, and unclean hands.

9. Plaintiff may have failed to mitigate his damages, if any, and his recovery is accordingly reduced or barred.

10. Plaintiff’s claims are barred or limited by inequitable conduct.

11. Any harm or damage suffered by Plaintiff was caused by his own conduct and/or that of his tenant, not Defendants. Plaintiff and his tenant refused to provide reasonably requested reliable documentation. This, not Plaintiff’s request for such information, caused whatever problems Plaintiff thinks he had.

12. Plaintiff's claims are barred by fraud and misrepresentation on the part of Plaintiff.

13. Plaintiff's claims are barred or limited by the provisions of C.R.S. § 38-33.3-101 *et seq*., including without limitation -302(1)(k).

14. The Defendants are entitled to recover their attorney fees pursuant to the provisions of 42 U.S.C. § 3613(c)(2), C.R.S. §§ 13-17-201 and 38-33.3-123(1), Sections 21 and 23 of the Declaration and Article XI, Section 4 of the Bylaws.

15. Plaintiff has failed to establish the necessary criteria for declaratory relief.

16. Plaintiff has failed to establish the necessary criteria for compensatory relief.

17. Plaintiff has failed to establish the necessary criteria for punitive relief.

18. The Defendants' liability, if any, must be measured by the provisions of C.R.S. § 7-128-401.

19. Plaintiff's claims constitute a claim filed in bad faith or for purposes of harassment, entitling Defendants to attorney fees pursuant to 15 U.S.C. § 1681n(a)(1)(c).

20. Plaintiff's claims are limited by C.R.S. § 7-123-105.

21. The Defendants reserve the right to amend their Answer to add, modify or withdraw affirmative defenses and counterclaims based upon the course of investigation and discovery herein.

WHEREFORE, having fully answered the Complaint, Defendants pray the Court to dismiss the Complaint with prejudice, to enter judgment in favor of Defendants, to

award Defendants their costs, expert witness fees, and attorney's fees, and to grant such other and further relief as the Court deems proper.

## COUNTERCLAIMS

Defendant, Aspen View Condominiums Association, Inc., for its Counterclaims in the above-captioned action, states and alleges as follows:

## GENERAL ALLEGATIONS

1. Jurisdiction and Venue are proper in the United States District Court for the District of Colorado.

2. The United States District Court for the District of Colorado has jurisdiction of Defendant's state law Counterclaims pursuant to 28 U.S.C. § 1367.

3. The Aspen View Condominiums Association, Inc.(the "Association"), is a Colorado not-for-profit corporation organized pursuant to the various provisions of the Colorado Revised Non-profit Act, C.R.S. §§ 7-122-101, et seq.

4. Plaintiff, Alvaro Arnal, is a natural person and is a record owner of certain real property located in Pitkin County, Colorado having a legal description as follows:

**Unit 201, Aspen View Subdivision, Pitkin County, Colorado**.

Also known as Unit #201, Aspen View Condominiums, 326 Midland Ave., Aspen, Colorado 81611.

5. The Association is the entity charged with exercising certain rights and obligations contained in the Condominium Declaration for Aspen View, the Bylaws of the Aspen View Condominiums, Inc., the Association's duly adopted Rules and Regulations, the Association's duly adopted Policies, if any, and the rights and

obligations provided by the Colorado Common Interest Ownership Act, C.R.S. §§ 38-33.3-101, et seq. (the “CCIOA”).

6. The Association’s Executive Board is charged with management of the Association as a common interest community pursuant to the terms of the Association’s Declaration, Bylaws, and the various provisions of the CCIOA.

7. The Association’s Executive Board has a fiduciary duty to all unit owners in the Association to enforce the various provisions of the Association’s Declaration, Bylaws, the Rules and Regulations, and Policies, if any, as well as the various provisions of the CCIOA.

8. The Association’s Schedule A, Rules and Regulations provides that “Dogs will not be permitted on the premises” of the Aspen View Condominiums. This prohibition has been in place since at least July 13, 1988 and was enacted by majority vote of all unit owners of the Association.

9. Pursuant to the terms of the Declaration, paragraph eighteen (18). Compliance with Provisions of the Declaration, By-laws, of the Association.:

> [e]ach unit owner shall comply strictly with the provisions of [the] Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto as the same may be lawfully amended from time to time. Failure to comply with any of the same shall be grounds for an action to recover sums due, for damages or injunctive relief or both, and for reimbursement of all costs and attorneys’ fees incurred in connection therewith, which shall be maintainable by the Managing Agent, the Board of Managers in the name of the Association in [sic] behalf of the owner or, in the proper case by an aggrieved owner.

10. As a unit owner, Plaintiff is obligated to comply with the provisions of the Declaration, Bylaws and decisions and resolutions of the Association as well as the provisions of the CCIOA.

11. Pursuant to the terms of the Declaration and the provisions of the CCIOA, all unit owners are entitled to rely on the various provisions of the Declaration, Bylaws, Rules and Regulations adopted pursuant thereto, and any Policies of the Association adopted pursuant thereto at the time they purchased there unit and at all times thereafter.

12. All unit owners are entitled to reasonably rely on, and comply with, the various provisions of the Association's documents prohibiting the unit owners from keeping a dog on the premises unless such unit owner is legally entitled to do so.

13. Plaintiff is entitled to reasonably rely on, and comply with, the various provisions of the Association's documents prohibiting the unit owners from keeping dogs on the premises.

14. Pursuant to C.R.S. § 38-33.3-316:

> [t]he association, if such association is incorporated or organized as a limited liability company, has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. Unless the declaration otherwise provides, fees, charges, late charges, attorney fees, fines, and interest charged pursuant to section 38-33.3-302(1) (j), (1) (k), and (1) (l), section 38-33.3-313(6), and section 38-33.3-315(2) are enforceable as assessments under this article. The amount of the lien shall include all those items set forth in this section from the time such items become due.

15. On April 25, 2013, John Trasvina, Assistant Secretary for Fair Housing and Equal Opportunity issued a memorandum the subject of which was "Service

Animals and Assistance Animals for People with Disabilities in Housing and HUD-Funded Programs" (the "April 25, 2013 HUD Notice").

16. The April 25, 2013 HUD Notice specifically addresses "service animals" and "assistance animals" for people with disabilities in Housing. The HUD Notice expressly states that "[h]ousing providers may ask individuals who have disabilities that are not readily apparent or known to the provider to submit **reliable documentation of a disability and their disability-related need for an assistance animal**." See also *Sabal Palm Condominiums of Pine Island Ridge Assoc. Inc. v. Fischer, et al.*, 6 F.Supp.3d 1272, 1280-1281 (S.D. Fla. 2014), *citing Overlook Mutual Homes, Inc. v. Spencer*, 415 F.Appx. 617, 620-621 (6th Cir. 2011). Plaintiff's First Amended Complaint omits the fact that the Association sent a copy of the April 25, 2013 HUD notice to Plaintiff in connection with his tenant's request for a reasonable accommodation.

17. There is a growing problem of people using fake service dogs, which has a profound and negative effect on the disabled, business and medical communities, and the airline industry . . . there is some reason to be skeptical of requests to keep a dog as an accommodation for a disability in certain cases, particularly where the dog assists the disabled person by rendering emotional support or where the disabled person does not have readily apparent physical symptoms. See *Sabal Palm Condominiums of Pine Island Ridge Assoc. Inc. v. Fischer, et al.*, 6 F.Supp.3d 1272, 1275 (S.D. Fla. 2014).

18. On October 11, 2013, Plaintiff informed the Association that he had been contacted by a prospective tenant who "has a service dog". Plaintiff did not make a request for a reasonable accommodation for his tenant at that time.

19. On October 29, 2013, Plaintiff contacted the Association seeking further information on whether service dogs were allowed on the premises of the Aspen View Condominiums. Plaintiff did not make request for a reasonable accommodation for his tenant at that time.

20. On November 13, 2013, Plaintiff sent the Association an email informing the Association that he intended to rent his unit to an individual with a "service dog" wherein he states "[a]ll of the research I have done on this issue shows that I cannot legally discriminate against a disabled person by denying her the rental because she has a service dog". The November 13, 2013 email failed to provide reliable documentation that Plaintiff's tenant was in fact disabled/handicapped, as defined by the Fair Housing Act, or provide reliable documentation that Plaintiff's tenant had a disability-related need for the dog. The November 13, 2013 email did not request a reasonable accommodation for Plaintiff's tenant.

21. Upon information and belief, sometime after November 13, 2013, Plaintiff permitted his tenant to take possession and occupy his unit at the Aspen View Condominiums and keep a dog on the premises.

22. On December 24, 2013, the Association sent Plaintiff a copy of its recently adopted Policy regarding service animals at the Aspen View Condominiums. At that time Plaintiff had not yet requested a reasonable accommodation for his tenant.

23. On January 3, 2014, Plaintiff requested a reasonable accommodation for his tenant in the form of a request for an accommodation from the Association's Rules

and Regulations prohibiting unit owners and their tenants from keeping dogs on the Aspen View Premises.

24. While the January 3, 2014 email requested a reasonable accommodation on behalf of Plaintiff's tenant, it failed to provide reliable documentation of Plaintiff's tenant's disability and/or disability related need for a dog in connection with the request for a reasonable accommodation. Instead, the email affirmatively asserts that such information is not required, stating: "[p]lease note that she left questions 3 and 4 blank as she is not legally required to provide this information nor is she comfortable doing so". Questions three (3) and four (4) asked Plaintiff's tenant to disclose her disability and her disability-related need for a dog.

25. Plaintiff's claim, that his tenant was not legally required to provide information regarding her claimed disability and disability-related need for her dog in connection with the request for a reasonable accommodation, was and continues to be, an incorrect legal conclusion as to what information the Association was permitted to request from Plaintiff and his tenant.

26. On January 6, 2014, the Association again requested reliable documentation of Plaintiff's tenant's disability and disability-related need for maintaining the presence of her dog on the Association premises and extended the deadline to provide such documentation until January 8, 2014.

27. In response, on January 6, 2014, Plaintiff informed the Association that his tenant told him that she did not have to confirm that she was disabled or provided documentation of her disability-related need for a dog in connection with the request for

a reasonable accommodation. Plaintiff also stated, “As for the dog waste et al: I agree that it is complete [sic] unacceptable and [sic] I will let her know about it.”

28. On January 8, 2014, members of the Association’s Executive Board attended a meeting with Plaintiff and his tenant, where at the Association again requested reliable documentation of Plaintiff’s tenant’s disability and disability-related need for a dog in connection with the request for a reasonable accommodation.

29. On January 14 and 28, 2014, the Association contacted Plaintiff requesting that he provide reliable documentation of his tenant’s disability-related need for her dog and that if such information was not forthcoming the Association was entitled to initiate fines against his unit or take other necessary action to enforce the terms of the Declaration and Bylaws.

30. On January 28, 2014, Plaintiff sent an email to the Association wherein he stated “I am working with [tenant] to get the doctor’s note that you requested . . . the ID Card for [the dog] has already been photocopied and I’m merely waiting for the doctor’s not to send everything in together.”

31. On January 30, 2014, Plaintiff sent an email to the Association wherein he stated “I spoke with [tenant] yesterday about your requests in the letter dated January 20, 2014. As there are still concerns about the validity of some of your requests [tenant] has asked that you contact Rosie at Canine Support Teams to help answer your questions and to get the necessary documentation that you need in order to allow [the dog] to live at Aspen View”. Despite Plaintiff’s request that the Association contact a third-party regarding his tenant’s dog, the Association was under no obligation to take

such affirmative action. The email again fails to confirm Plaintiff's tenant's disability and disability-related need for a dog in connection with the request for a reasonable accommodation.

32. On January 31, 2014, Plaintiff sent several emails wherein he again questions the Association's right to the information requested but ultimately stated his intent to provide the Association with the documentation as requested.

33. Plaintiff further offered, on his tenant's behalf, to release tenant's medical records to the Association. However, the Association rejected this proposal, as it never requested and had no interest in reviewing Plaintiff's tenant's medical records.

34. On February 5, 2014, Plaintiff, through counsel, provided the Association with a letter asserting that "the materials provided to date are more than sufficient" and that further requests for documentation of tenant's disability and disability-related need for an assistance animal constituted unreasonable requests aimed at intimidating Plaintiff and his tenant and further threatened the Association with litigation and administrative complaints should the Association continue to assert a right to such documentation.

35. On the same day, February, 5, 2014, Plaintiff sent a letter to the Association's Executive Board wherein he states:

> Unfortunately the Board has refused to heed my advice, without explanation as to why, and continues its attempts to bully me (the unit owner) and [ ] (my tenant) into providing information it is not legally entitled to receive and enforcing rules that can lead to litigation of the Aspen View Homeowner's Association for discriminatory practices towards a person with a disability . . .

> Also, as the Board refuses to cooperate with me in order to reach the proper decision I have consulted an attorney to ensure that my actions are truly protecting my rights, [tenant's] rights, the rights of any other disabled person with a service dog that chooses to live at Aspen View, and to try to ensure that litigation is not brought against the homeowner's association to which I belong

36. Plaintiff's February 5, 2014 letter demands the following of the Association:

> At this point I ask the Board to provide the following:
>
> 1) An updated letter that approves Natasha and Stevie's residence at Aspen View Condominiums. This letter should ask from Natasha the information that the Board is legally entitled to receive as per the Fair Housing Act. The letter should also stipulate the conditions that both allow Natasha reasonable accommodation at Aspen View and that protect the health and safety of the other tenants.
>
> 2) A reasonable timeline that enables Natasha to gather and provide the information that the Board requests.
>
> 3) A record detailing the amount of the Association's funds that the Board has spent in relation to this matter.
>
> Attached to the email that contains this letter please also find attached a letter to the Board from my attorney.

37. As of February 5, 2014, Plaintiff continued to maintain that the Association was not entitled to receive reliable documentation of Plaintiff's disability and disability-related need for the dog in connection with the request for a reasonable accommodation.

38. On February 6, 2014, the Association was forced to contact legal counsel to respond to the Plaintiff's attorney's February 5, 2014 letter; and on February 10, 2014, the Association's legal counsel informed Plaintiff and his attorney that the Association would provide Plaintiff and his tenant an additional ten (10) days, until

February 20, 2014, to submit the reliable documentation of tenant's disability and disability-related need for a dog in connection with the request for a reasonable accommodation.

39. On February 20, 2014, Plaintiff's attorney provided the Association with a letter from tenant's doctor dated February 18, 2014, which did not confirm tenant's disability or disability-related need for a dog in connection with the request for a reasonable accommodation.

40. On March 4, 2014, Plaintiff's attorney informed the Association that Tenant intended to move-out on or before April 1, 2014. At that time, Plaintiff had not provided the Association with reliable documentation regarding his tenant's disability or disability-related need for a dog in connection with the request for a reasonable accommodation.

41. On March 7, 2014, the Association, through counsel, informed Plaintiff that, although it had not received reliable documentation of his tenant's disability and disability-related need for the dog, it would allow Plaintiff's tenant to keep her dog in Plaintiff's unit until April 1, 2014 in the interest of resolving the dispute.

42. The March 7, 2014 letter further informed Plaintiff of the Board's position with regard to his tenant:

> To be clear, the Board's position is not that [tenant] must vacate your client's unit. The Board merely seeks to enforce the prohibition on maintaining a dog in the Aspen View Condominiums. While [tenant] may choose to vacate your client's condo as a consequence of the Board demanding removal of her dog, the longevity of [tenant's] tenancy and legal obligations to your client are the sole province of [tenant] and your client. The Board will not accept nor be subject to any liability with respect

to a breach of any lease that may or may not exist between your client and his tenant.

43. On March 11, 2014, Plaintiff's attorney provided the Association with a letter from tenant's doctor stating that "Ms. MacArthur has a well-documented seizure disorder which is a recognized disability by the ADA. She benefits greatly from the assistance of [dog] in that the [dog] is able to sense an impending seizure, prepare [tenant] for the seizure, and potentially alert others of the situation."

44. At that time, the Association took no position or action with regard to the adequacy of the March 11, 2014 correspondence because of Plaintiff's prior notice that his tenant would be moving out by April 1, 2014 and continued assurance she intended to do so.

45. Plaintiff's tenant vacated his unit on or about April 1, 2014.

46. The Association allowed the dog to remain in the unit for some five (5) months, during which time the only affirmative action it demanded from Plaintiff was that he supply reliable documentation of his tenant's disability and disability-related need for the dog. During that time, the Association took no action to evict tenant or otherwise physically remove tenant's dog from the unit.

47. On April 21, 2014, the Association provided Plaintiff with notice of the potential that fines and legal fees may be assessed against him and his unit in connection with the dispute over his tenant's dog and informed him that he had an opportunity to be heard before an impartial decision maker; as defined by, and provided for, by C.R.S. § 38-33.3-209.5. Plaintiff, through counsel, provided correspondence to the Association disputing the Association's right to lien his unit for fines and legal fees.

48. After providing Plaintiff an opportunity to be heard, the Association's Executive Board determined that maintaining the presence of a dog in Plaintiff's unit without providing the Association with reliable documentation of Ms. MacArthur's disability and disability-related need for an assistance dog constituted violation of the Association's Declaration, Bylaws, and duly adopted rules, regulations and policies.

49. The decision of the Association's Executive Board to assess Plaintiff's unit for fines and attorney fees incurred during the pendency of the dispute regarding his tenant's dog was memorialized in THE ASPEN VIEW CONDOMINIUM ASSOCIATION, INC. BOARD OF MANAGERS RESOLUTION CONCERNING FINES AND FEES ASSESSED AGAINST UNIT 201.

50. Pursuant to C.R.S. § 38-33.3-316 and the Association's Declaration, on July 9, 2014 the Association filed its Statement of Lien for the unpaid assessments in the Office of the Pitkin County Clerk and Recorder. The Association filed an Amended Statement of Lien relating back to the July 9, 2014 Statement on November 24, 2014 to correct a scrivener's error therein.

## FIRST CLAIM FOR RELIEF - BREACH OF COVENANTS

51. Defendant incorporates by reference the allegations set forth in paragraphs 1 through 50 above.

52. Plaintiff, on or about September 24, 2012, became subject to, bound by, and agreed to the terms of Condominium Declaration for Aspen View, recorded on January 27, 1979 at reception number 181186 in the records of the Clerk and Recorder of Pitkin County, Colorado ("Declaration").

53. The Declaration and C.R.S. § 38-33.3-302(1)(k) provide that Plaintiff shall be personally liable for unpaid assessments, late charges, fines, interest, and attorney fees and costs.

54. On June 5, 2014, the Association, through its Executive Board, after providing Plaintiff notice and an opportunity to be heard, resolved to assess against Plaintiff's unit fines and attorney fees necessarily incurred in connection with Plaintiff permitting his tenant to keep a dog in his unit contrary to the Association's Rules and Regulations prohibiting dogs on the Aspen View premises without providing reliable documentation of Plaintiff's tenant's disability and disability-related need for a dog in connection with the request for a reasonable accommodation.

55. Plaintiff has failed to comply strictly with the provisions of [the] Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto, by failing to pay the assessment on his unit, by permitting his tenant to keep a dog in his unit on the Aspen View premises without providing reliable documentation that his tenant was entitled to a reasonable accommodation from the Association's prohibition on dogs, and by otherwise failing to comply strictly to the covenants in the Declaration and Bylaws and other Association documents.

56. Pursuant to the Declaration and C.R.S. § 38-33.3-316 such an assessment on Plaintiff's unit constitutes a statutory lien on Plaintiff's property.

57. The Association is entitled to an award of damages, including pre- and post-judgment interest, costs and reasonable attorney fees necessarily incurred by the

Association as a result of the Plaintiff's breach of the terms of the Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto, in amounts to be proven at trial.

**SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT**

58. Defendant incorporates by reference the allegations set forth in paragraphs 1 through 50 above.

59. The Declaration and the Bylaws of the Association represent contracts, to which Plaintiff is subject to, bound by, and agreed to by virtue of his ownership of his unit at Aspen View Condominiums.

60. Plaintiff breached his obligation to comply strictly with the provisions of the Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto, by failing to pay the assessment on his unit, by permitting his tenant to keep a dog in his unit on the Aspen View premises without providing reliable documentation that his tenant was entitled to a reasonable accommodation from the Association's prohibition on dogs, and by otherwise failing to comply strictly with the various terms of the Association's Declaration and Bylaws and other Association documents.

61. The Association at all times has performed all of, or substantially performed all of, it duties, including its fiduciary duties to all unit owners, and obligations under the terms of the Association's Declaration and Bylaw, and the decisions and resolutions of the Association adopted pursuant thereto.

62. The Association has a fiduciary duty to all unit owners at the Aspen View Condominiums to enforce the various terms of the Association's Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto.

63. The Association is entitled to an award of damages, including pre- and post-judgment interest, costs and reasonable attorney fees necessarily incurred by the Association as a result of the Plaintiff's breach of the terms of the Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto, in amounts to be proven at trial.

**THIRD CLAIM FOR RELIEF – BREACH OF CONTRACT IMPLIED DUTY OF GOOD FAITH AND FAIR DEALINGS**

64. Defendant incorporates by reference the allegations set forth in paragraphs 1 through 50 above.

65. The Declaration and the Bylaws of the Association represent contracts, to which Plaintiff is subject to, bound by, and agreed to by virtue of his ownership of his unit at Aspen View Condominiums.

66. Under Colorado Law, every contract contains an implied duty of good faith and fair dealing.

67. Plaintiff breached the implied duty of good faith and fair dealing by failing to strictly comply with various terms of the Association's Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto.

68. Plaintiff breached the implied duty of good faith and fair dealing by repeatedly failing to provide the Association with reliable documentation that his tenant was entitled to a reasonable accommodation for her dog, including documentation that his tenant was in fact disabled and had a disability-related need for a dog in connection with the request for a reasonable accommodation despite Plaintiff repeatedly promising to do so.

69. Plaintiff breached the implied duty of good faith and fair dealing by maintaining that the Association was not permitted to request reliable documentation demonstrating his tenant was entitled to a reasonable accommodation.

70. The Association is entitled to an award of damages, including pre- and post-judgment interest, costs and reasonable attorney fees necessarily incurred by the Association as a result of the Plaintiff's breach of the implied duty of good faith and fair dealings, in amounts to be proven at trial.

**FOURTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT**

71. Defendant incorporates by reference the allegations set forth in paragraphs 1 through 50 above.

72. Pursuant to the Colorado Uniform Declaratory Judgments Law, C.R.S. §§ 13–51–101 et seq., C.R.C.P. Rule 57, Fed. R. Civ. P. 57, and 28 U.S.C. § 2201, the Court upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

73. The Association is entitled to a declaratory judgment that Plaintiff is subject to, bound to, and otherwise obligated to strictly comply with the various provisions of the Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto.

74. The Association is entitled to declaratory judgment that Plaintiff breached or otherwise violated the various provisions of the Declaration, the Articles of Incorporation, and the Bylaws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto.

75. The Association is entitled to a declaration that it had the right and the obligation to inquire into whether Plaintiff's tenant was entitled to an reasonable accommodation from the Associations prohibition on keeping dogs on the premises by requesting that Plaintiff provide reliable documentation of his tenant's disability and disability-related need for a dog.

76. The Association is entitled to a declaration that it had a fiduciary duty to all unit owners in the Association to inquire into whether Plaintiff's tenant was entitled to an reasonable accommodation from the Association's prohibition on keeping dogs on the premises by requesting that Plaintiff provide reliable documentation of his tenant's disability and disability-related need for a dog.

77. The Association is entitled to a declaration that is lawfully requested that Plaintiff provide the Association with reliable documentation supporting Plaintiff's request for a reasonable accommodation and lawfully requested reliable documentation

of Plaintiff's tenant's disability and disability-related need for a dog in connection with the request for a reasonable accommodation.

78. The Association is entitled to a declaration that, pursuant to the Declaration and C.R.S. § 38-33.3-302(k)(I), the Association is entitled to recover reasonable attorney fees and other legal costs for collection of assessments and other actions to enforce the power of the association, regardless of whether or not suit was initiated, and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws, and rules and regulations of the Association.

## PRAYER FOR RELIEF

WHEREFORE, Defendant, Aspen View Condominium Association, Inc., respectfully requests that the Court enter judgment in its favor and against Plaintiff, Alvaro Arnal, on Defendant's Counterclaims, and for judgment to enter as follow:

a. Against Plaintiff for unpaid assessments, late charges, fines, interest, and attorney fees and costs;

b. Award Defendant, Aspen View Condominium Association, Inc., damages including pre- and post-judgment interest, costs and reasonable attorney fees necessarily incurred by the Association on its claims for Brach of Covenants, Breach of Contract, Breach of the Implied Duty of Good Faith and Fair Dealing;

c. Award Defendant Aspen View Condominium Association, Inc., reasonable attorney fees and other legal costs for collection of assessments and other

actions to enforce the power of the association, regardless of whether or not suit was initiated, and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws, and rules and regulations of the association; and

d. Grant such further relief as the Court deems just and proper.

Dated this 8th day of June, 2016.

Respectfully submitted,

s/ Debra J. Oppenheimer
***Debra J. Oppenheimer***
HindmanSanchez P.C.
555 Zang Street, Suite 100
Lakewood, Colorado 80228-1011
Telephone: 303-432-9999
doppenheimer@hindmansanchez.com
ATTORNEYS FOR DEFENDANTS AS TO THE COMPLAINT

s/ J. Kevin Bridston
***J. Kevin Bridston***
Sean M. Hanlon
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80201-8749
Telephone: (303) 295-8104
Facsimile: (303) 295-8261
kbridston@hollandhart.com
smhanlon@hollandhart.com
ATTORNEYS FOR THE ASSOCIATION AS TO ITS COUNTERCLAIM

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2016, I electronically filed the foregoing **ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Phyllis A. Roestenberg
Law & Mediation Office of Phyllis A. Roestenberg
217 East 7th Avenue
Denver, CO 80203
PARoestenberg@gmail.com

s/ Carole Zarrella
***Carole Zarrella, Paralegal***
HindmanSanchez P.C.
555 Zang Street, Suite 100
Lakewood, Colorado 80228-1011
Telephone: 303-432-9999
czarrella@hindmansanchez.com